J-S47021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| WILLIAM CLARK | |
| Appellant | No. 2172 MDA 2014 |

Appeal from the Judgment of Sentence August 28, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-2146-2014

BEFORE:  ALLEN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 19, 2015**

William Clark appeals from the judgment of sentence imposed on August 28, 2014, in the Court of Common Pleas of Dauphin County, made final by the denial of post-sentence motions on November 25, 2014.  On June 11, 2014, a jury convicted Clark of persons not to possess a firearm, possession of a small amount of marijuana, and operating a vehicle with unsafe equipment (a fog lamp violation).[1]  The court sentenced Taylor to an aggregate term of four to eight years' imprisonment.  On appeal, Clark claims the verdict was against the weight of the evidence and the court

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S. § 6105(a)(1), 35 P.S. § 780-113(a)(31)(i), and 75 Pa.C.S. § 4107(b)(2), respectively.

abused its discretion with respect to his sentencing. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm the judgment of sentence.

The facts and procedural history are as follows. On December 7, 2013, at 5:30 p.m., Police Officer Chad McGowan, of the Harrisburg City Police Department, was on patrol in the uptown section of the city. N.T., 6/10/2014-6/11/2014, at 37. Officer McGowan indicated this section of the city is a high crime and drug area. *Id.* at 37-38. While on patrol, he noticed a vehicle, being driven by an individual subsequently identified as Clark, with its passenger-side fog lamp out.[2] *Id.* at 39-40. Officer McGowan observed Clark turn into the parking lot of a convenience store, located at 2723 North Sixth Street. *Id.* at 41-42. He then activated his lights and pulled into the parking lot where Clark had parked. *Id.* As the officer was getting out of his vehicle, Clark also exited his vehicle. Officer McGowan told Clark to get back in his car. *Id.* at 48-49. Clark looked at the officer and said "okay," but continued walking towards the store. *Id.* at 51. At this point, Officer McGowan observed that Clark had a fanny pack by his waist. *Id.* The officer then gave Clark a second command to get back in his car, but Clark again looked at the officer, said "okay," but kept walking and eventually

---

[2] The officer indicated this was a technical violation and the charging section came from the Motor Vehicle Code. *Id.* at 39-40.

entered the store. *Id.* at 52-53. Officer McGowan then contacted the Dauphin County dispatch and requested back-up. *Id.* at 53.

After "a few seconds," Clark exited the store. *Id.* at 55. Officer McGowan noticed Clark appeared nervous and fidgety, would not make eye contact, wanted to access the pockets in his pants, and was no longer wearing the fanny pack.[3] *Id.* at 56. Officer McGowan told Clark to keep his hands where the officer could see them and begin walking towards him. *Id.* at 57. The officer indicated that Clark became more cooperative and eventually settled down once the officer started talking to him. *Id.* at 58.

Seven to ten seconds later, a store employee exited the store, holding the fanny pack that the officer originally saw on Clark. *Id.* at 59. The employee said Clark "came in the store, dropped th[e fanny pack] on a rack, and left." *Id.* at 58. Officer McGowan immediately turned to Clark and asked what was in the fanny pack. *Id.* at 60. Clark responded that there was marijuana in the fanny pack. *Id.* When Officer McGowan searched the pack, he found "a knotted plastic baggy of marijuana." *Id.*

Based on Clark's admission, the officer then asked if there was anything inside the vehicle. *Id.* at 60-61. Clark initially responded that

---

[3] Officer McGowan also testified he could smell alcohol on Clark's breath, he was unsteady on his feet, and spoke with "fixed slurred speech." *Id.* at 70.

there was nothing inside the car or trunk.[4]  *Id.* at 61-62.  Officer McGowan then asked for consent to search the vehicle, to which Clark gave permission to search the car.  *Id.* at 62.  The officer had the keys in his possession but waited until other police officers arrived on the scene before he began the search.  *Id.* at 62.  Officer McGowan stated that before he touched the car, Clark notified him there was a gun in the trunk.  *Id.* at 63.  Clark then said that it would be a rifle contained in a gray cloth-type material.  *Id.* at 68.

Officer McGowan opened the trunk and observed several items, including a gray cloth material in the middle of the trunk.  He picked up the cloth and inside, there was a green rifle.[5]  *Id.* at 69.  After securing the gun, Officer McGowan read Clark his *Miranda*[6] rights, which he waived by acknowledging that he understood his rights and wanted to speak with the officer about the weapon.  *Id.* at 74.  Clark said he purchased the rifle from a friend for $18.00, and that he was aware the rifle was in the trunk.  *Id.* at 74-75.

_____

[4]  Clark also stated he was not the owner of the vehicle.  *Id.* at 61.  The officer ran the vehicle's registration through the Dauphin County dispatch and the car did not come back as stolen.  *Id.*

[5]  The officer described the firearm as a Glenfield .22 caliber.  *Id.*  at 70.  There was a stipulation at trial that the gun was operable.  *Id.* at 71.

[6]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Police Officer Jeffrey Clark,[7] of the Harrisburg Police Department, also responded to the scene.[8]  *Id.* at 111.  Officer Clark was present at the time Officer McGowan searched the car and confirmed that Clark did give permission for the search of the vehicle.  *Id.* at 115.  Officer Clark also heard one of the *Miranda* statements being read by his fellow officer, and heard Clark state that he got the gun from another individual.  *Id.* at 117-118.  Lastly, Officer Clark heard Officer McGowan ask Clark if he knew that the gun was in the trunk of the car while he was driving it, and that Clark responded in the affirmative.  *Id.* at 118-119.  Clark was then arrested and charged with persons not to possess a firearm, firearms not to be carried without a license, tampering with physical evidence, possession of a small amount of marijuana, possession of drug paraphernalia, a fog lamp violation, and driving without a license.

A two-day jury trial began on June 10, 2014.[9]  Both officers testified to the above-provided observations of the night in question.  Clark also took the stand and recited a different version of events.  He stated he was

_____

[7]  Based on the record, it does not appear that Officer Clark is related to Clark.

[8]   On cross-examination, it was revealed that Officer McGowan did not include the fact that Officer Clark responded to the scene in his report.  *Id.* at 92.

[9]  On the first day, the Commonwealth withdrew the charges of firearms not to be carried without a license, tampering with physical evidence, possession of drug paraphernalia, and driving without a license.

coming back from a ceremony when he stopped in the convenience store to speak with the owner. *Id.* at 134-135. He then heard Officer McGowan "holler" out something. Id. at 139. Clark looked back and said, "Who, me? … I'm goin' in the store." *Id.* at 140. When Clark exited the store, he testified Officer McGowan told him about the car light being out. *Id.* at 141. Clark denied wearing a fanny pack.[10] *Id.* at 141. Moreover, he denied that he knew anything about the gun. *Id.* at 156.-157. He did admit to having marijuana in his pocket. *Id.* at 143.

The jury convicted Clark of persons not to possess a firearm, possession of a small amount of marijuana, and operating a vehicle with unsafe equipment. On August 28, 2014, the court sentenced him to a term of four to eight years' incarceration for the firearms conviction, and imposed fines with respect to the remaining crimes. Clark filed a post-sentence motion, which was denied on November 25, 2014.[11] This appeal followed.[12]

---

[10] He also stated he did not given Officer McGowan consent to look in the car and the officer opened the trunk before Officer Clark arrived on the scene. *Id.* at 147, 154.

[11] During this time, defense counsel filed a motion to withdraw, which was granted on September 8, 2014. New counsel was appointed to represent Clark on appeal.

[12] On December 23, 2014, the trial court ordered Clark to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Clark filed a concise statement on January 6, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 12, 2015, adopting, as
*(Footnote Continued Next Page)*

In Clark's first argument, he contends the verdict was against the weight of the evidence.[13]  Clark's Brief at 14.  Specifically, he states, "As the Commonwealth presented no evidence that [he] physically possessed a firearm, it could only sustain its burden by proving that [he] constructively possessed the firearm."  *Id.* at 15.  To this extent, Clark submits the weight of the evidence did not demonstrate that he knew the rifle was in the trunk, and therefore, he was legally incapable of intending to possess it.  *Id.* at 16.  Clark points to the following:  (1) he testified he was not aware there was a rifle in the vehicle, and that many family members had access to the car; (2) he refuted Officer McGowan's testimony that he admitted there was a rifle in the trunk and that he bought it from a friend; and (3) Officer McGowan's testimony was conflicting as to whether he consented to the search and who was present at various points during the incident.  *Id.*

> Appellate review of a weight of the evidence claim is well-established:
>
> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. ***Commonwealth v. Widmer***, 560 Pa. 308, 318–20, 744 A.2d 745, 751–52 (2000); ***Commonwealth v. Champney***, 574 Pa. 435, 443–44, 832 A.2d 403, 408–09 (2003). On review, an appellate court does not substitute its judgment for the finder of

*(Footnote Continued)* —————

dispositive, its November 25, 2014, memorandum opinion that accompanied its order denying Clark's post-sentence motion.

[13]  Clark properly preserved his challenge to the weight of the evidence by raising it in a post-sentence motion.  ***See*** Pa.R.Crim.P. 607(A).

fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination. **Widmer**, 560 Pa. at 321–22, 744 A.2d at 753; **Champney**, 574 Pa. at 444, 832 A.2d at 408.

**Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014).

Here, the trial court found the following:

Clark claims that his convictions were against the weight of the evidence, because he was never shown to have known that the firearm was in the trunk of the vehicle. Clark concedes that Officer McGowan testified that Clark admitted there was a rifle in the vehicle and that he bought the rifle from a friend, but avers that Officer McGowan's testimony is not credible.

After reviewing both Officer McGowan's testimony and the testimony provided by Clark we are unable to find that Clark's testimony, given the facts provided in this case, should be given greater weight than Officer McGowan's testimony. We therefore cannot find that the jury's verdict and their rejection of Clark's testimony in favor of Officer McGowan's testimony constitutes a denial of justice.

Trial Court Opinion, 11/25/2014, at 2.

We agree with the court's well-reasoned analysis. Clark fails to explain in what manner the trial court abused its discretion in denying his weight claim. Rather, his argument consists only of attacks on the credibility of the investigating officer, who testified that Clark admitted to knowing the gun was in the trunk of the vehicle. As such, he asks this Court to reweigh the evidence; however, we decline to do so. As our Supreme Court has made clear, we may not reweigh the evidence and substitute our judgment

for the trial court's decision.  **See Lyons**, **supra**.  Therefore, Clark's weight claim fails.

In his second argument, Clark challenges the discretionary aspects of his sentence.  Clark's Brief at 17.  Specifically, he contends his sentence is excessive and unreasonable because the court failed to consider the following mitigating circumstances:  (1) Clark "is an honorably discharged veteran and his eligibility for Veteran Affairs [("VA")] grants for educational assistance is limited in amount and time[;]" and (2) because the firearm was located in the trunk, it was not readily accessible to him.  **Id.** at 18, 19.

The standard of review for a claim challenging the discretionary aspects of sentencing is well-established:

> Sentencing is a matter vested in the sound discretion of the judge, and will not be disturbed on appeal absent a manifest abuse of discretion.  An abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that then sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009).

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute."  **Commonwealth v. Hoch**, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted).  To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Edwards*, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Here, Clark filed a post-sentence motion challenging the discretionary aspects of his sentence, as well as a timely direct appeal. Moreover, his brief includes the requisite statement pursuant to Pa.R.A.P. 2119(f), setting forth the reasons relied upon for allowance of appeal. *See* Clark's Brief at 11-13. Therefore, we may proceed to determine whether Clark has set forth a substantial question that his sentence is inappropriate under the Sentencing Code. *See Commonwealth v. Titus*, 816 A.2d 251, 255 (Pa. Super. 2003).

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Ventura*, 975 A.2d at 1133 (citation omitted). As noted above, Clark argues his sentence was excessive because the trial court failed to properly consider mitigating factors.

> An allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question. *Commonwealth v. McNabb,* 819 A.2d 54, 57 (Pa. Super. 2003). *Accord Commonwealth v. Wellor,* 731 A.2d 152, 155 (Pa. Super. 1999) (reiterating allegation that

- 10 -

sentencing court "failed to consider" or "did not adequately consider" certain factors generally does not raise substantial question). *Compare* **Commonwealth v. Felmlee**, 828 A.2d 1105, 1107 (Pa. Super. 2003) (*en banc* ) (stating substantial question is raised, however, where appellant alleges sentencing court imposed sentence in aggravated range without adequately considering mitigating circumstances).

**Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010).

Accordingly, because Clark argues the court failed to consider several mitigating circumstances, we find this issue does not raise a substantial question. **See id.** Nevertheless, even if his argument did raise a substantial question, it would be meritless as the trial court properly explained its rationale as follows:

> In fashioning its sentence, this Court took into account all of the testimony presented at the time of sentencing and the Pre-Sentence Investigation. The standard range called for five to ten years of incarceration, and the mitigated range called for four to eight years of incarceration. This Court gave Clark a sentence in the mitigated range based on the fact that he was a Veteran, honorably discharged, and that the firearm was an antique rifle found in his trunk. This Court took into consideration the mitigating factors presented by Clark, and agreed with him that a sentence in the mitigated range was appropriate. This Court could not find, nor has Clark provided, a legal or factual basis to depart from the sentencing guidelines.

Trial Court Opinion, 11/25/2014, at 2-3 (record citation omitted). Accordingly, we discern no abuse of discretion. Therefore, Clark's sentencing argument also fails.

Judgment of sentence affirmed.

Allen, J., joins this memorandum.

Strassburger, J., files a concurring memorandum.

- 11 -

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2015